Good morning. Welcome to all of our visitors, including two of my daughters. This is Wednesday, May 22, 2013. The first case on the call of the docket is Agenda No. 16, Case No. 114853, Board of Education of Peoria School District No. 150 v. Peoria Federation of Support Staff, Security & Policemen's Benevolent & Appellants, please proceed. It's Agenda No. 6. Excuse me. Good morning, Your Honors. I am Sharon Purcell, Assistant Attorney General on behalf of the Illinois Labor Relations Board and the Illinois Educational Labor Relations Board Appellants. This case, at issue in this case, is the Definition Section of the Public Labor Relations Act, specifically Section 3N, which contains the definitions for public employee, and Section 3O, which contains the definition of public employer. In 2010, the General Assembly amended those sections of the Public Labor Relations Act when it enacted Public Act 96-1274 to include within the definition section of public employee, peace officers employed by a school district in its own police department, and amended Section 3O to include school districts in employment of peace officers in its own police department. Following that enactment, this case arose when a representation petition was filed by the union who is also appellant in this case, seeking to represent a group of, a bargaining unit of employees of the Peoria School District under the Public Labor Relations Act. Now that bargaining unit had been previously certified, or the union had been certified as the bargaining representative of that unit of those employees under the Educational Labor Relations Act. The public labor, under Section 9 of the Public Labor Relations Act and its correlating administrative rules, the General Assembly has provided an orderly investigative procedure for resolving before the Labor Relations Board questions that arise when such a petition is filed. Nevertheless, the school district sought circuit court intervention, asking it to find that it and its employees do not meet the definitions of public employee and public employer under the Public Labor Relations Act. Circuit court correctly, also the school district asked the circuit court to declare that the amendment was unconstitutional as special legislation, because it alleged that the district, that the legislation could apply only to it and no other school districts. The circuit court correctly dismissed that complaint on the basis that the bargaining unit determinations under both the Labor Relations Act and the Educational Labor Relations Act are within the exclusive jurisdiction of the labor boards, and it also dismissed the claim of special legislation, finding that it did not constitute special legislation. The General Assembly has charged the labor board with the authority to administer and enforce the act, including recognition of bargaining representatives, and it has given the board exclusive jurisdiction to resolve disputes arising under the act. And secondly, the circuit court's dismissal of the second claim, the third claim, that the legislation is constitutional, it can't show that the legislation grants a benefit to a class of individuals that it withholds from a similarly situated group, and even if it could, the legislation is rationally related to the state's policy of protecting public safety. But of course, the first thing that I would like to point out is that this court need not reach the issue of the special legislation issue, because there has been as yet no determination as to whether or not the employee sought in this representation petition meet the definition contained in the Public Labor Relations Act for public employee. That is, there's no determination that they are indeed peace officers employed by a school district in its own police department, and no determination that the district is such an employer. And it's also your contention that that determination should be made by the ILRB. The whether or not they meet the definitions? Right. Oh, absolutely, Your Honor. Okay, and it's also your contention that the circuit court should not get involved and that the appellate court can properly remand it to the circuit court to make that determination. That is... It is not your contention that the boards would have the authority to determine the constitutionality of the amendment. No, no. But generally, I mean, parties do bring, they'll make their argument, and then when the case goes up, with the record that has been made on the representation petition, all the evidence that has come in, then the appellate court has everything that it needs to look at and decide, you know, both the representation issue and the constitutional issue, if it would need to. The argument could be made, you're saying, before the boards as to the constitutionality. They could not make a ruling or finding, but then that would be a part of the record that would go to the appellate court. Well, it would be therefore, for instance, in this case, because there has not been a determination, it could be that the employees would be found to be, and the employer, not covered under the act. Right. And so then the appellate court wouldn't need to address the special legislation issue, because it wouldn't be an issue in the case. Aside from that, do you think the appellate court in a declaratory judgment, or the trial court in a declaratory judgment action would have the authority to make the determination that the school board is asking for, other than the fact that these employees have not yet been certified as public employees under the Labor Relations Board Act? I want to make sure I understand. Which determination, whether or not they're employees? Constitutionality. The constitutionality. You know, constitutionality of the act is not subject to fact-finding, so I don't know why. I mean, the legislature's judgment with regard to that issue is not subject to fact-finding, so I don't know. So is the issue of constitutionality properly before us? Is it an issue that we could decide? And if we decide that the legislation is unconstitutional, doesn't that end the case? I would say that that would. That would be the result. But given that there's no determination as to what these employees do and what the definition is, because it may not be necessary, it might never be necessary, whether or not any employees and employer meet the definitions under the act is never determined unless and until a representation petition is filed with the board. And then under Section 9A of the act, the General Assembly under Section 9 has given the board the authority and the duty to investigate. It's an investigative process under Section 9A. It's a representation procedure when a petition is filed. And it's not intended to be adversarial. It's fact-finding. And then when the facts come in, and the board has all the facts, and it applies the facts to the definitions of the act to see if the standards are met. And if not, and the board's rules specifically provide that, the board then, or the executive board, then has the authority to investigate. And the executive director, depending on the status of the case, because it can be dismissed even before a hearing, if it's obvious that they're not covered, would dismiss the petition. So the act and the rules both expressly contemplate and provide and expect the board to make this determination, which, contrary to what the district has argued, is not a question of law, because it's a question that involves determining what these employees do, what their job is, what the district's situation is, what the employment circumstances are, and then applying that to the interpretation of the definitions in the act. So if I understand you correctly, your request would be that we send this back to the board to make that determination first. Once that determination is made, can the school district then challenge the constitutionality of the act? Yes, it could. If it needed to. If it decided to. Right. Because the board, as I have said, there has been no determination. So then it would come back to us, or to the appellate court. Presumably. Or could they do it in a declaratory judgment action? The constitutionality and sort of split them up? Yes. In essence? You know, I don't know a good answer to that, frankly. I know that, you know, the circuit court should not be deciding whether or not employees are public employers, because that is all part of the board's authority, and that's their expertise, and that's what, as these courts have decided, and the appellate court, given the comprehensive nature of these labor relations acts, the circuit courts have been divested of jurisdiction to hear issues that arise. The case is in an unusual procedural posture, though, right? Typically we wouldn't decide a constitutional question if we can decide it on other grounds. But based on the relief you're requesting, sending it back to the board for some fact-finding, we really wouldn't be deciding anything. And plaintiff seems to ask that we use our supervisory authority, right, to determine the constitutional question. Which is something we could do, right, and resolve the case. So it's in somewhat of an unusual posture. Would you agree? I agree with that. And that's because instead of going through this orderly procedure that the act and the board's rules provide for, in that parties generally avail themselves of when these kind of representation petitions are filed, there's, you know, we have a lot of this unusual situation where, you know, this, had this been determined by the board already, as I said, there would be a record and the whole case would have come up. So from your position, that is what we'd be deciding, that the proper place would be for the board to do this fact-finding? Yes. That is the proper place. And that would be the import of our decision? For the board's? Right. Yeah, I would say that that's... For the board's, for the court? Right, because you're, you have some problem with what's been done in the trial court, right? Well, the trial court, the trial court dismissed the complaints and said it belongs in the board's. The appellate court reversed. Right, really, okay, we spoke, right. And so that, you know, that's why we're here, because it sent the whole matter back, including the determination of whether or not these are public employees and a public employer, back to the circuit court for a determination. Ms. Purcell, the appellate court, did they, they didn't actually reach the constitutional question, though, did they? Technically, did they actually make a ruling? No, no, it did not. There is no constitutionality issue squarely before us at this point? I would say, unless the court, there's not. It should, there should be... Well, putting aside Justice Thomas's suggestion, I mean, in terms of what's framed and before us right now, the constitutionality is not at issue. I mean, it's challenged, but there's no ruling. No, there is no ruling. There is no ruling other than from the circuit court that found that it was not special legislation. And sent the whole thing back to the labor boards. But... Well, and I think even plaintiffs would agree, they're asking us to exercise our supervisory authority in that, in that situation, to address the constitutionality. They are asking that, yes, yes. But the boards generally, as we've discussed, I mean, they don't rule on that. They don't rule on constitutionality. But, you know, as to the first issue, we want to emphasize that that's, that issue is one that squarely belongs before the labor board and not before the circuit courts. And, I mean, it's the, the, the appellate court's reasoning really just presents just a really unworkable framework for what, with a representation petition going back and forth between the labor boards and the circuit court. And I see that my time is up, and I concede to Mr. Voyles. Thank you. Thank you. I'm Shane Voyles on behalf of the Union PBPA Unit 114. It's my privilege to be here today. Thank you very much. With respect to this issue of the constitutionality of the statute, the procedural posture is odd. It's quite odd. The trial court below said it is not unconstitutional, and that was reversed by the appellate court. So whether or not the issue of constitutionality is before this court, I apologize. It's kind of crude, but it's kind of like being a little bit pregnant. It is, in one sense. The court said, the appellate court said, well, it could be unconstitutional, so it reversed that part of the trial court's judgment. So there is, and, you know, theoretically, if it's reversed, sent all the way back down to the trial court, and we have a declaratory ruling, we're before you now. So, you know, the trial court may take a stab at whether or not it's unconstitutional at some point in time, but cases that get to this court, no disrespect, are few and far between, and who better to pass upon that issue than the members of the Supreme Court. And plaintiff is definitely asking for that relief. With respect to that issue, the analysis, I do want to raise two points. Number one, the analysis that the appellate court did was either incorrect or incomplete under the special legislation constitutional provision, and there is, without a doubt, a legitimate state interest involved in the legislation. With respect to that first point, there's a two-part test, as I read District 159 v. Schiller, and that's on page 44, of the Attorney General's brief, and what this Honorable Court said is that nothing in the special legislation provision of the Constitution, it said nothing in that provision bars the legislature from enacting a law specifically addressing the conditions of an entity that is uniquely situated. Now, procedurally, this came before the trial court under 2615. That's an evidence there is no hearing, so the trial court and the appellate court took the complaint as pleaded as true, and the complaint, this is at the record at C-7, paragraph 33, says, District 150 is the only school district which employed peace officers in its own police department in existence on the effective date of the amendment, January 1, 2011, so it claims to be uniquely situated. And because it claimed to be uniquely situated, the appellate court found, this is page 11 of its decision, it's appendix 11, the last sentence of the last full paragraph on that page, that District 150 had the distinction of being the only school district in the state that maintains its own police force. So, under District 159 v. Schiller, it is impossible, under the complaint as alleged, that the plaintiff can meet the first special legislation test. Special legislation bars a situation where one person that belongs to, there has to be at least two in the class, and one person is disadvantaged. One person got a special benefit through special legislation that the other person in the class was denied. How do you distinguish Eastside Levy, the Eastside Levy decision? The Eastside Levy decision was found unconstitutional when there was one, it only applied to one sanitary district that covered two counties, I believe. If I recall correctly, I don't have the facts squarely before me, but I think there was another, I think it may have been the complainant, or somebody who brought that issue to the court, didn't get to take advantage of the same legislation that was involved in that case. Again, that's my recollection, I'm not going to tell you I'm 100% spot on with that. Does the fact that the legislature made it impossible for any other school district to ever be in this position, even if they have police officers as employees, make that a constitutional concern? By making it as of the effective date of this act, meaning it can never happen again? Even if they're situated in the same place as Peoria? Not under District 159 v. Schiller, because that was precisely the situation that was involved there, and I don't agree with the appellate court that when the legislature said on the effective date of this act, it meant something completely different than when it said as of the effective date of this act. I think that's reading far too much into the statute without some extra legislative history and that sort of thing. In any event, this court should be aware that, without a doubt, the plaintiff claimed that they're the only school district in the state that had its own police force in its complaint, and that's paragraph 33. After the Attorney General's Office raised this Schiller case, the plaintiff stated in its brief to this court, this is page 17, first sentence of the first full paragraph, in contrast to the county... In County Bureau, there's nothing unique about School District 150. Counsel for the appellee? May it please the court. I'm Stanley Eisenhammer, and I represent the plaintiff appellee, the Board of Education of the Peoria School District 150. I should note that the one and only time I brought my sons to court, they were admonished by the court for misbehaving. Oh, I did bring my mother once, and she wasn't. The issue before the court, the main issue before the court, is whether the amendment to the Illinois Public Labor Relations Act constitutes an unconstitutional special legislation. If you answer that in the affirmative, or you reverse, or you affirm the appellate court and rescind it back, either way, that, in a sense, ends the case. Following up on Justice Kilbright's question, there has been no determination of that issue at this point. Technically, that's correct, because they won the motion to dismiss, and therefore, it was reversed, in a sense, sending it back for the court to determine it. I think if you went with the appellate, if I were on the circuit court, and I was listening to the appellate court, I would then, on my motion for summary judgment, or whatever I'd file next, issue an alert saying that it's unconstitutional. But, it's technically, you could decide by affirming the appellate court and rescinding the appellate court, that it just goes back for that determination, that the motion to dismiss was incorrect. Or, as Justice Thomas said, as what we've requested, you could exercise your supervisory power and end this litigation now, rather than having it sent back, going to the appellate court again, and then maybe coming up here. With respect to the procedural issues, I'd like to just, I wasn't going to talk about it, I'll talk about it now. This case is on all fours with your case in Kane County. In that case, the county challenged the constitutionality of the Labor Act. The court said, you don't have, when you're challenging, and they were challenging the recognition of the clerks under that act. The court said, if you're challenging special legislation, I mean, you challenge the constitutionality of an act, you don't have to exhaust your remedies. And in this particular case, it doesn't really matter, I think, based on the special legislation, whether eventually these people are police officers or not. I'll get into the substance of the special legislation argument, but basically, you don't have to get into it. It's clear under the act that peace officers, as of the date of the act, have the right to interest arbitration. Peace officers after the act don't. Nor is it the province of the labor boards that decide the constitutionality of the law. So if you sent it back all the way as they request to the labor boards, they can't decide that issue. And if I brought it up, they would say, no, that's not for us to determine. You mentioned Kane County. The question of whether the potential affected employees are peace officers seems to be a fact-based inquiry that falls within the authority and expertise of the ILRP. And if so, how does that square with the decision of Kane County? Let me read you some of the language. There are exceptions to the exhaustion required, however. The rule does not apply when a party challenges the constitutionality of a statute upon its face or contends the authority or jurisdiction of the administrative agency and those issues are raised by the county in its complaint. Moreover, the questions presented are entirely legal and do not require fact-finding by the administrative agency or an application of its particular expertise. Here, then, the parties were not required to exhaust the administrative limits before bringing their respective actions. So how does that square with your position? Because with respect to the constitutionality issue, there is no factual issue that needs to be determined about whether they're police officers or not. It's clear under the Act that at least the legislature finds that somewhere there are police officers in existence at the time of the Act and they would fall under the Labor Act, regardless of any kind of fact-finding. Is it still your position that Kean supports that position? And I could drop Count 2. Count 2 was only supplemental in order, if the Court didn't find the Act constitutional, we would still be able to prevail on the issue of these aren't police officers. So Count 1 is not dependent on Count 2. And I think it is a legal question, because the legal question really is, can a school district employ peace officers? Because it's not like a municipality. The only authority in the school code for something like this is truant officers. We can appoint truant officers. And the only authority for truant officers to possibly be police officers is a 40-year-old attorney general opinion that said that truant officers, because they can make arrests in the course of their duties, qualified to go to police training academy and get training. And that opinion was only restricted to the right to go to a police academy, not whether they're police officers. So really, as part of this, somewhere along the line, assuming you don't find it unconstitutional, the issue of whether school districts can employ peace officers or are truant officers police officers needs to be determined. And that is not something within the purview of the Labor Board. This is a legislative interpretation of a school code provision dealing with truant officers. And we haven't had a determination yet. And there's some real questions about it, because of the way the truant officer section is written, that there are true police officers. Mr. Eisenhammer, I'm trying to understand your argument here. Are you saying that we peel away the procedural problems, that you're going to be making an argument that there's no authority to hire these individuals, whether you call them peace officers, truant officers, or whatever? Well, we have the authority to hire truant officers. Are you saying your argument is going to be down the road, there's going to be a challenge that these people should not have been employed? No, not that they shouldn't have been employed, but they're not police officers under the definition either of the criminal code or the secondary definition in the Labor Act. But what's the import of that? What's the effect? The effect would be, assuming the law is constitutional, the school districts in this particular situation would still not – it's jurisdictional. It wouldn't be under the Public Labor Relations Act. Those employees would then go bounce back, so to speak, into the Educational Labor Relations Act and be under that act. So it is jurisdictional. It's not sort of the same thing as under the Labor Act, you could have peace officers and you can have special police officers. Police officers who have – which are almost the same, but there are some important distinctions. Police officers have interest arbitration. Special police officers still remain under the Labor Act, the Public Labor Act, but they don't have interest arbitration and they have to be – the two have to be in separate units. So if that was the issue, it would be for the Labor Board to decide. But this is a jurisdictional issue about which act should handle it, and that's another reason we brought – we thought about these issues before we brought this case. One of the issues that made this – to do it this way through a declaratory judgment action was because of the – if we did it their way, it would be even more complicated because we would bring – we would bring this issue, decide whether they're police officers, and assuming they are or not, there would be an appeal. On the appeal, we would not be able to raise the constitutionality of the act because they didn't have jurisdiction to raise it either, so I'd still have to bring a declaratory judgment. We have two actions pending, not one. One in the Public Sector Labor Act, one in the Educational Labor Relations Act. If we appeal both of them, they're appealed to separate appellate courts. One goes to the first, one goes to the fourth, the other goes to the third. So even if we got consistent judgments, there would be two appeals going to two separate appellate courts and maybe then to the Supreme Court. So we would be even in a more procedural morass as opposed to what I thought was a simpler way of going, which is go to the circuit court, get the constitutional issue decided. If we need to do any – go to the secondary, we could do that, or he could remand it back to the Labor Board at that point. But it seemed a simpler path up. I think the only thing that made it more complicated is the trial court should have ruled in our favor and we wouldn't have to worry about raising the supervisory issue. And you know what? Following up on Chief Justice Kilbride's query, I'm trying to understand this now. The Attorney General and you are arguing they should go back to the LRB for a factual determination as to whether these employees come under public employees. Are you arguing that because the Peoria School District doesn't have the authority to hire police officers, in point of law they are not police officers and therefore it's not a factual question? Right. So that we – Well, we can hire truant officers, but truant officers – Are not police officers. Are not police officers. And that is not dependent upon facts. That's dependent upon the law. Right. As you read the law, because the truant officer section says they can make arrests and stop riots, but it only says in the course of their duties. So they can't – they're not anywhere in the district. If you read that broadly like a police officer, that means I can have my own police force that can enforce – that we can have – the school district can have a separate police force that can enforce the laws in the city of Peoria, which wouldn't sit very well with the city. But theoretically we could do this as opposed to a very narrow issue of I'm a truant officer and in the course of my duties I can do it. Otherwise, we could appoint a teacher to be a truant officer and carry a gun and we would have in a sense a whole separate army in Peoria. So it is a legal issue on that particular issue. You said the truant officers carry a gun? Yes, because they were sent for PTI training. And do they have to abide by the law to be registered and to keep on going for training? Well, at least we have had them do that. We have now had – there's been an issue. But is that the policy of the school board or the district or is it because there's some statute somewhere that says that? It's the policy of the school district. But not – they don't come under the state? In our view they don't come under the state and we've just recently received a letter saying that you're not – you don't come under the state. There's some issue now where we have to pay for PTI training. We used to have to get subsidized 50%. There's an issue about whether – if I use them as security guards, which they're used most of the day, they're not truant officers at that point. But which hat do they wear and when? And how do you – It's a good – I mean, this is one of – this is a particular issue in Peoria that's sort of – we're struggling with, which is when are they – because of this 40-year-old – But what is their job title? Their job is school resource officer. And that means anything? Right. I was going to say that, you know, the labor board's procedure, I think implicitly they've recognized this is the better way to go because there has been no stay on the proceedings before either labor board. And they're all – they could have gone on and made their factual findings, but they didn't. They're waiting for – they're waiting for the appellate court. If they're waiting for the appellate court, they're waiting for the Supreme Court. So I think implicitly they recognize this saves substantial judicial, administrative, school resources to do it procedurally this way. Can I ask you a question on the constitutional discussion? Really two questions. I'm not clear, and I have not spent a lot of time with the complaint. I don't think the complaint was attached to the brief, so I've not seen the complaint yet. In terms of your constitutional argument, who is the group that we're to look at, the select group? The select group are police officers, peace officers. It's the police officers? I mean, peace officers employed by a school district in the school district's own police department on the effective date of the act. So we should be focusing on the police officers as a group and comparing them to other police officers. Or school districts, too. Or school districts who employ those people. No, no, no, no, no, no. That's my question. Okay. That's my question. Exactly my question. I don't understand – and I struggle with this a lot. Who is the select group? That seems to be the question. Is it the police officers, peace officers, whoever they are, or is it the district? Who is the group that we are to be looking at? Well, actually, both. And I can make arguments for both. And for the school district, it is – Which one does your complaint ask us to look at? I think it's really the school district. Because the school district – So what you just told us a minute ago is this – sorry. We're going to just look at the school district and compare this school district with other school districts. Other school districts. Now, then I'm going to ask, how does this legislation favor your school district? And how do you say it's unconstitutional if it favors your school district? Well, taking their position – I'm asking you – I'm sorry. You've raised a constitutional question. You've now told us that this is special legislation because a select group has been favored by this legislation. You've told us the select group are school districts. And now my question to you is, how is the school district favored under this legislation? In theory, because the police officers can't go on strike, then the public safety is saved and protected from not having police officers on duty while schools are in session. Although I doubt a school would be in session if it was a problem, but unlike municipalities. But that, in theory, is the issue. That's the reason they're giving. And how does that favor the district? Well, it favors the district in theory because other school districts would have to endure a strike. If they organize a police department and those police officers go on strike, there would be an issue of public safety. So don't we have a problem where the legislature said that the two ideas of arbitration and the right to strike are equivalent? They're not equivalent. How do we get around the problem? Well, first of all, the legislature has said that they are. No, the legislature has not said they are. The Attorney General says they are, quoting a case from the 4th District that was raised in the same 4th District, who said that's not what we said. The right to strike and arbitration are not the same. It's like saying the death penalty and life imprisonment is the same because the convicted murderer dies in prison. Does the union benefit by being subject to the ILRB instead of the IELRB? In this case, I would say yes. The reason being is in smaller groups, when you look at interest arbitration, in smaller groups interest arbitration favors a smaller group who doesn't have more strength to strike, as opposed to a larger group. In the city of Chicago, for example, where interest arbitration probably would be more of a detriment to the union than it is to, or a public employer who has, the municipality who has police who are then blackmailed by a strike, quote, unquote. I don't want to make it that way. But, you know, they're put on our horns with a dilemma on that. Back to, I think, Justice Tice's question. But if the legislature, if we find the legislature has determined that interest arbitration is comparable to the right to strike, how can we second guess and override that legislative determination? Okay. Well, first, if they found it preferable in this particular case, in general it wouldn't be a problem. But what they've done is they've done it by special legislation. They've granted it, interest arbitration to Peoria, or not granted it to Peoria, but didn't grant it, wouldn't be granting it to Rockford, Elgin, East St. Louis, Bloomington because of the way the act is structured. And again, the legislature did not say, there's nothing in the act or whatever that said interest arbitration and strikes are the same. I'm sorry. Am I misreading 5 ILCS 315-2 that said, I believe it says, that the legislature expressly set forth its judgment that these dispute resolution mechanisms are, quote, alternative, expeditious, equitable, and effective procedures. They're alternative, and alternative in different situations. That interest-based arbitration is a good method when you have public safety, let's say the police and fire, on strike. They haven't found it for school districts, even though there's been lots of debate, whether interruption of public services education is an important right that should be done by that. So they found them as alternatives. They did not find them as equivalent. And they're alternatives used in a particular situation. In one situation, it is appropriate, which they found in police and fire. But in school districts, let's say with teachers, they have found that it's not appropriate. It says alternative. They're arguing they're equivalent. And there's a big difference, because alternative is sometimes it makes sense to have interest arbitration in a case when public safety is involved. And in this case, even if, you know, again, the problem here is I'm not arguing that the public safety may or may not be involved. Mr. Eisenhammer, your time has expired. I don't know if Justice Tice, do you have any other questions? Thank you. Thank you. Thank you. Your Honors, first I would like to point out that with regard to Mr. Eisenhammer's argument that whether or not these employees are public employees is a question of law. Their argument, their discussion back and forth with your Honors dealt with facts. What do these employees do? When do they do it? Where do they do it? How do they do it? Who does it? These are manifestly questions that the Board is authorized and has the expertise to resolve. And it does so on a routine basis. It is not a question of law. As I think I pointed out earlier, it's a mixed question of law and fact where we fact find, the Board fact find, apply those facts to the standards in the Act, and then make that determination. So, and the Board, if you look at the definitions in the Board of Peace Officer, for instance, it's peace officers employed in a department, an agency, a police force. Those are not all defined. So the Board routinely determines whether or not peace officers in any of those situations are peace officers under the Act. So this is not anything peculiar that is now coming up before the Board. The Board has, you know, with its grant of authority to administer a bargaining unit, determinations, it's been given the authority to interpret as need be for purposes of the Labor Relations Act. That's what we need to keep in mind. These definitions are for purposes of the Labor Relations Act, not for purposes of other statutes. So it's not contingent on whether or not, in any sense, an employer is compliant with some other statute. You know, they may have their employees doing whatever it is they're doing, and that's the facts. And so then, you know, for purposes of the Labor Act, which, you know, is the promotion of labor stability, as well as public safety and collective bargaining that, of course, occurs under the Act, that's what these definitions are looking at, and that's what they're meant to do. If we don't address the constitutional issue or if we find it in favor of the constitutionality, with regard to the second point in the complaint in this case, your opposing counsel argues that it's a question of law that we can determine whether or not these are police officers employed by the school district or whether they are not authorized to hire police officers and therefore they don't even come under the LRB. What's your position? Well, without a record as to what these employees do. But their argument, if I understand it, is they don't have the legal authority to hire police officers and therefore they cannot be. You're saying it still is a question of fact? They're saying that on the basis of the truant officer code. You know, what's in the school code does not necessarily, I mean, the board would consider what that code provides while it also looks at what actually is going on. Because, I mean, the legislature, by placing that amendment in the act, signals that there may be some employees in the state of Illinois who are performing as peace officers and a district somewhere maybe that has taken on one or more, you know, the function of what normally would be the municipality where instead of having the municipality's police in the schools and policing the schools, they're doing that. Whether or not that's something that they're authorized to do, you know, that could be part of that analysis. But that question itself coming up under the school code, I mean, the labor board doesn't enforce the school code. It enforces the act for the purposes of the act. And the board's, I mean, the district's argument makes plain that it's raising, the argument it raises, these are all questions that the board has plenty of experience answering. You know, our corrections officers, peace officers, our deputies in the courts, peace officers, are, for instance, a case a long time ago before the board. I think the Animal Control Act named, oh, I'm sorry. It's in my brief, Your Honor, and I thank you very much. Thank you. Thank you. Mr. Boyles, help me out with this. I wish I had a little bit more time with Mr. Eisenhammer, but I believe the argument is that it's special legislation because their school district, the officers would not be, the peace officers would not be able to go out on strike where other school districts presumably they would be able to go out on strike and there's a public safety concern there and that's the purpose for it. But that's something they don't want, right, because if I heard Mr. Eisenhammer correctly, in smaller groups they'd rather they had the right to strike, right, as well, rather than have the arbitration because smaller groups don't have as much clout when it comes to strike. Is that basically what you heard as well? Yes, Your Honor. Their argument is, even in the wake of Sandy Hook, their argument is that they want the peace officers to be able to strike, yes. They're fighting for that right for the peace officers. Is there anything, case law or otherwise, that when you're arguing it's special legislation that is conferring a benefit that they don't want, a presumed benefit that they don't want, that is there any estoppel argument there or anything else with respect to asserting that it's special legislation intended to be helpful that in their position is hurtful? Not that I'm aware of, no, Your Honor. I think the County Bureau case is on point and that District 159 case, even though it's a school district and it was sort of a different, it didn't deal with labor relations, but it deals with the issues. Even the situation where the statute closed, opened and closed on one day, that situation existed in that case. What is the significance here of the legislation closing the class as of the date of passage? I mean, if they really have public interest in it, why would they do that? Your Honor, I don't think they did. I think, you know, the statute is presumed to be valid. It's presumed not to be retroactive. Statutes apply prospectively. I really think the appellate court put too much emphasis on the word on which is a preposition, without any legislative history, to find that on meant something different than as of. I don't think the legislature, there's nothing in the legislative history that indicates that it's specifically intended to close the class on that date. And one thing I noticed when I was sitting here, the open and close date is not necessarily consistent. The appellate court found July 23, 2010, and I think somebody's brief, I think maybe it was the plaintiff's brief, said the class opened and closed in 2011. The significance would be was there anybody else in existence on that date, if that's really what the statute means. But I think the district has to show there was somebody else. If they're unique, which is what they alleged in their complaint, then it's not special legislation. Special legislation specifically benefits one person, one group over another, another similarly situated. If there's a class of one, there is no special legislation under that District 159 case. One other point while I had time, I have the duty manual. I have the policies. Just as counsel referred to the employees, they are police officers throughout the duty manual. They're what? Police officers. What was the last phrase you said? They're off duty or something? Throughout the manual, they're referred to as police officers. The school police officers are assigned to specific sites throughout the district. The department has established a relationship with Peoria Police Department and the juvenile department of the Peoria Police Department to assist in handling problems on our near school campuses. They're called police officers throughout the duty manual. You're reading apparently from the manual. May I ask you this? Again, I don't have the complaint in front of me, but the way that the appellate court describes the complaint. Correct. The plaintiff alleges that it maintains its own police force. Correct. And the appellate court found them to be SROs. That was the term we used in the appellate court, school resource officers. And that part of the 4th District's opinion is spot on. They're police officers. Today they're now being called truant officers. But again, what are we doing here? This complaint was filed, right? This complaint dismissed, right? Correct. Under 2619, right? 115. Okay, 115. But the complaint by the plaintiff alleges these are police officers. Yes, they had the one and only police department in the state and the school district. Correct. Mr. Voiles, just to clarify, your reference to the manual, is that in the record? No, sir, it is not. It is not. But it was asked by the court. Thank you. Time is concluded. Thank you. Thank you very much. Case number 114853, the Board of Education, Peoria School District number 150, Appalachia versus Peoria Federation of Support Staff, Security and TPPA number 114 is taken under advisement as agenda number six. Ms. Purcell, Mr. Voiles, Mr. Eisenhammer, we thank you for your arguments. You're excused.